Cecil E. KNEIP, et al., Appellants,

v.

UNITEDBANK–VICTORIA, Appellee.

No. 13–88–349–CV.

Court of Appeals of Texas,
Corpus Christi.

July 7, 1989.

Ken E. Mackey, Austin, for appellants.

Mark D. Wilson, Houston, for appellee.

Before DORSEY, UTTER and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

Cecil and Sylvia Kneip and their son, Gary, sued UnitedBank–Victoria ("bank") for fraudulently inducing them to enter into a loan agreement. The bank counterclaimed for recovery on the promissory note executed by the Kneips in exchange for the loan, or alternatively for foreclosure on the deed of trust securing the loan. The jury found that the bank had acted fraudulently and that the Kneips had suffered mental anguish; however, it failed to award the Kneips any compensation for either actual damages or mental anguish. After finding that the bank acted maliciously, the jury awarded $5,000.00 in exemplaries to both Cecil and Sylvia Kneip, and zero exemplaries to Gary Kneip. The

trial court entered a judgment in favor of the bank for $75,714.00 and further declared the deed of trust involved in the transaction to be null and void. By nine points of error, the Kneips challenge the adequacy of the jury's damage findings. We affirm.

The Kneips owned and operated a small business which was liquidated in 1983. After selling all its assets, the business still owed the bank over two hundred thousand dollars which it could not repay. This debt was unsecured, although Cecil and Gary Kneip were personal guarantors for the full amount that their company owed to the bank.

Unable to satisfy this debt, the Kneips and bank president Tom Tyng reached an agreement. The bank loaned $269,000.00 to Cecil and Sylvia Kneip, which Gary Kneip personally guaranteed to be repaid. The Kneips used this loan to pay off the amount owed to the bank by the family business.

The parties dispute the remaining terms of the agreement. The bank stands by the written provisions of the promissory note and deed of trust. The deed provides that the loan is secured by an undeveloped sixty-acre tract of land owned by Cecil and Sylvia Kneip. Tyng admitted that the net effect of the transaction was that the bank was no longer an unsecured creditor, but was now a secured one.

All three members of the Kneip family testified that they had an oral agreement with Tyng that the bank would never actually look to the sixty-acre tract for repayment of the loan. They contend that Tyng agreed, on behalf of the bank, that the sole collateral for the new loan was to be Cecil Kneip's life insurance proceeds, totalling $500,000.00, and that the bank would pay the premiums as they came due, rolling them into the balance of the loan. They also contend that Tyng promised that the note and accumulated interest would be automatically renewed at the end of the year, until Cecil died, when the life insurance proceeds would be used to satisfy the debt. Tyng denied making these oral statements, but admitted telling Cecil

Kneip that the bank would pay the insurance premiums "for a very short time" until another less expensive policy could be obtained.

After the bank paid ten insurance premiums, Tyng was replaced by a new president, Tom Aughinbaugh. When Aughinbaugh refused to abide by the purported agreement and demanded that the Kneips begin making payments, the Kneips brought this suit for fraud.

By their first and second points of error, the Kneips contend that the jury's finding of "zero" actual damages resulting from the bank's fraudulent conduct is contrary to the overwhelming weight and preponderance of the evidence. They specifically argue that they are entitled to 1) $1,442.15 as the cost of obtaining a title policy as part of the closing fees on the loan, 2) $1,432.00 for other fees paid to a title company, and 3) approximately $1,335.00 in attorney's fees.

■ In reviewing this point of error, we must consider and weigh all the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (Per Curiam). If the jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (Per Curiam).

■ In fraud actions, the objective is to compensate the defrauded party for his injuries, not to provide him with a "profit." *Morriss–Buick Co. v. Pondrom*, 131 Tex. 98, 113 S.W.2d 889, 890 (1938); *Duval County Ranch Co. v. Wooldridge*, 674 S.W.2d 332, 335–36 (Tex.App.—Austin 1984, no writ). "The true measure in every case of this kind is that rule which gives the complaining party the actual amount of his loss resulting directly and proximately

from the fraud practiced on him." *Pondrom*, 113 S.W.2d at 890.

■ At trial, the bank introduced into evidence several documents prepared by its attorney pertaining to the loan transaction in question. One document entitled "Settlement Statement" (DX 13) lists under the sub-heading "Title Charges" a total of $2,846.15 in expenses (including $1,442.15 for title insurance). Under the sub-heading "Gross Amount Due From Borrower," these title charges are included as part of the total amount of $269,000.00 owed by the Kneips to the bank. It is undisputed that the Kneips defaulted on their loan and have not paid back any of it. Hence, the jury was entitled to conclude that the Kneips suffered no out-of-pocket losses regarding title expenses.[1]

■ Finally, in regard to the Kneips' claim for attorney's fees, it is well settled that such expenses are not recoverable as actual damages in a fraud case. *Kilgore Federal Savings & Loan Association v. Donnelly*, 624 S.W.2d 933, 938 (Tex.App.—Tyler 1981, writ ref'd n.r.e.). We overrule points of error one and two.

■ The Kneips assert by their third, fourth, fifth and sixth points that the jury's findings of "zero" damages for mental anguish are against the great weight and preponderance of the evidence.

Cecil Kneip testified at trial that as a result of the bank's actions, he lost sleep on many occasions. He further admitted that his insomnia was directly caused by his rheumatoid arthritis. Sylvia Kneip stated that she suffered from an upset stomach, tension headaches, and insomnia, and that she took valium for these ailments. Gary Kneip testified that he, too, frequently experienced sleepless nights, headaches, and nausea.

■ It is within the jury's province to judge the credibility of witnesses and the weight to be given their testimony. *Hukill*

---

1. We further note that the trial court by its judgment awarded the bank not $269,000.00 but only $75,714.00, thus eradicating some two hundred thousand dollars of the Kneips' debt. In light of this, to award the claimed damages could be construed as a double recovery by the Kneips.

*v. H.E.B.*, 756 S.W.2d 840, 842 (Tex.App.—Corpus Christi 1988, no writ). This is especially true in regard to claims for pain, suffering, and mental anguish, which areas are necessarily speculative and should be left to a jury for determination of compensatory damages. *Rosenblum v. Bloom*, 492 S.W.2d 321, 325 (Tex.Civ.App.—Waco 1973, writ ref'd n.r.e.).

 If a plaintiff's complaints are subjective in nature, e.g. headaches, sleeplessness, etc., which the defendant cannot readily dispute, then the jury's negative answer to the damage issue will not be disturbed on appeal when it rests upon the testimony of the plaintiff alone. *Dupree v. Blackmon*, 481 S.W.2d 216, 221 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.) (Justice Keith, concurring); *Kraatz v. Faubion*, 617 S.W.2d 277, 279 (Tex.Civ.App.—Eastland 1981, no writ). In the instant case, the Kneips' complaints are subjective in nature and are supported only by their own testimony. Hence, the jury's findings of "zero" damages must be upheld.

The Kneips asserted at oral argument of this cause that this Court should nevertheless overturn the damage findings because they conflict with the jury's finding of fraud in response to Special Issue No. 1. By failing to present a point of error to this effect, the Kneips have waived this assertion. *See St. Paul Fire & Marine Insurance Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744, 748 (1962); *Kraatz*, 617 S.W.2d at 279. We further note that the purported conflict does not constitute fundamental error. *Murphree*, 357 S.W.2d at 749. Points of error three, four, five and six are overruled.

By their seventh, eighth and ninth points, the Kneips argue that the jury's exemplary damage award of $5,000.00 to Cecil and Sylvia and zero to Gary is manifestly too small and against the great weight and preponderance of the evidence.

 Before one is entitled to punitive damages, it is necessary to first allege, prove and secure jury findings on the existence and amount of actual damages. *Nabours v. Longview Savings & Loan Association*, 700 S.W.2d 901, 903 (Tex.1985).

Since we have upheld the jury's findings of "zero" actual damages, we conclude that the Kneips are not entitled to recover punitive damages. We therefore do not reach the inadequacy of the amount of exemplary damages awarded. Points seven, eight and nine are overruled.

The judgment of the trial court is AFFIRMED.