Martha SANCHEZ, Appellant,

v.

**JOHNSON & JOHNSON MEDICAL, INC., f/k/a Surgikos, Inc., Appellee.**

No. 08–92–00348–CV.

Court of Appeals of Texas, El Paso.

June 23, 1993.

Rehearing Overruled July 23, 1993.

---

**2.** As of the date appellant filed suit, he had allegedly been segregated for six years.

Steven C. James, Beck & James, P.C., El Paso, for appellant.

Stephen F. Fink and Steven W. Sloan, Thompson & Knight, Dallas, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from the entry of summary judgment and a judgment notwithstanding the verdict in a case alleging wrongful discharge, breach of contract, and fraud. Martha Sanchez, Appellant, brought suit against Johnson & Johnson Medical, Inc., f/k/a Surgikos, Inc., Appellee, under Article 8307c of the Texas Workers' Compensation

Act and further alleged claims for breach of contract and fraud when she was not permitted to return to work after being injured on the job. The trial court granted summary judgment in favor of Appellee on the claim of retaliatory discharge. After trial and a jury finding in favor of Appellant on the fraud claim, the trial court granted Appellee's motion for judgment notwithstanding the verdict. We reverse the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Martha Sanchez, Appellant, was injured on April 10, 1987 while working for Johnson & Johnson Medical, Inc. f/k/a Surgikos, Inc., Appellee, as a material handler. More than seven months after her date of injury, on November 20, 1987, Richard Gonzalez, the Personnel Manager for Appellee, sent Appellant a letter that stated Appellant had been placed on "indefinite medical lay-off" and that she had "recall rights" under the labor agreement. Appellant understood the letter to mean that she had a right to be recalled to her job and that this right of recall was for an indefinite time.

Nellee Powell, a Personnel Assistant for Appellee, prepared an internal Wage Personnel Change Notice and Status Notification stating that Appellant had been placed on medical "lay-off" effective November 30, 1987. Also on this document, Powell checked the block signifying "Termination." Powell testified that the reason she did so was because, "I regard it as a termination of employment whether it was a lay-off or not. It was a termination of employment." This form was signed by Powell's Requesting Supervisor as well as her Supervisor's Department Manager. Powell additionally sent a form to the Texas Employment Commission indicating that Appellant's employment ended on November 30, 1987.

On March 25, 1988, Appellant was released to light-duty work. She took the release to Appellee, met with Nellee Powell and told her she was ready to come back to work full-time. Powell informed Appellant that no light duty positions were available but that she would be called when one came open.

Powell prepared a memorandum of the meeting which reflects as follows:

Employee on lay-off status. Light duty work is not available. Advised employee that if her doctor releases to full duty she will be evaluated by company doctor & if we have any openings which she is eligible for she will be re-called otherwise to remain on lay-off.

Subsequent to this meeting, Appellant continued to call Appellee inquiring about work but was repeatedly told that there were no available positions. Furthermore, Belinda Callejo, an assistant in the Personnel Department, attempted to assure Appellant that no definite decision had been made concerning whether she could or could not come back to work.

In early 1989, Appellant met with Irma Christie, Appellee's Personnel Manager from April of 1988 until October 1989. The record shows that Christie promised Appellant that if she could establish that she had been fully released medically, she could have her job back. Appellant obtained the requested medical release, brought it to Appellee as requested, and was once again promised she would be called.

When Appellant was not contacted, she asked her attorney, Mark Howell, to call Appellee. Howell telephoned the company on March 30, 1989 and spoke with Irma Christie who informed him that Appellant was "standing in line" and since Appellee was expanding its work force, it looked good. Although Appellant was never contacted, the evidence at trial shows that light-duty jobs were in fact available back in March 1988, when Appellant had tried to come back to work. Furthermore, the evidence shows that employees who had been previously laid off for economic reasons, with less seniority than Appellant, had been recalled; and new employees were hired without contacting Appellant. Finally, from the period beginning January 1, 1987 and ending May 1, 1991, only one employee laid off for medical reasons was ever recalled.

Appellant filed suit on April 1, 1991 alleging violation of Article 8307c of the Texas Workers' Compensation Act. She later amended her petition to include claims for

breach of contract and fraud. Appellee moved for summary judgment as to the 8307c claim, asserting statute of limitations. Appellee also attempted to remove the case to federal court by claiming federal law preempted Appellant's fraud claim. The federal court considered removability and remanded the matter to state court. The state trial court then granted summary judgment on the amended motion on May 29, 1992 as to the Article 8307c claim. Thereafter, the case went to trial on the fraud and breach of contract claims, and the jury returned a verdict in favor of Appellant for $275,000 on the fraud claim.[1] Appellant sought entry of judgment. In response, Appellee moved for judgment notwithstanding the verdict on several grounds, which motion was granted. Appellant appeals the granting of summary judgment and judgment notwithstanding the verdict in favor of Appellee.

## II. DISCUSSION

In Points of Error Nos. One through Six, Appellant complains of the trial court's granting of summary judgment in favor of Appellee on her claim of retaliatory discharge.

■■■ The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Hernandez v. Kasco Ventures Inc.*, 832 S.W.2d 629, 631 (Tex.App.—El Paso 1992, no writ). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970).

■■■ In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *Stoker v. Furr's, Inc.*, 813 S.W.2d 719, 721 (Tex.App.—El Paso 1991, writ denied). Where the defendants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Hernandez v. Kasco Ventures Inc.*, 832 S.W.2d at 633.

■■■ The above standard of review is altered when the movant relies on an affirmative defense to avoid liability. Instead of merely demonstrating the lack of a fact issue as to one element of the non-movants claim, the movant must establish each element of his defense as a matter of law. *Munoz v. Gulf Oil Co.*, 693 S.W.2d 372, 373 (Tex.1984); *Republic Bankers Life Insurance Co. v. Wood*, 792 S.W.2d 768, 776 (Tex.App.—Fort Worth 1990, writ denied). Thus, when moving for summary judgment based on the running of limitations, the defendant must show that as a matter of law, the suit is barred by limitations. *A.C. Collins Ford, Inc. v. Ford Motor Co.*, 807 S.W.2d 755, 759 (Tex.App.—El Paso 1990, writ denied).

■■■ When pursuing an Article 8307c "retaliatory discharge" suit, an aggrieved party has two years within which to institute litigation after the cause of action **accrues**. *Thurman v. Sears Roebuck & Co.*, 952 F.2d 128, 131 (5th Cir.1992); *Almazan v. United Servs. Auto. Ass'n*, 840 S.W.2d 776, 780 (Tex.App.—San Antonio 1992, writ denied); *Luna v. Frito–Lay*, 726 S.W.2d 624, 625 (Tex.App.—Amarillo 1987, no writ); *see also Smith v. Coffee's Shop for Boys and Men*, 536 S.W.2d 83, 84 (Tex.Civ.App.—Amarillo 1976, no writ). A cause of action accrues under 8307c when facts exist authorizing the employee to seek judicial relief. *See Thurman*, 952 F.2d at 132; *Luna*, 726 S.W.2d at 628. In *Thur-*

---

1. The record shows that Appellee moved for directed verdict at the close of Appellant's case.

The Motion for Directed Verdict was granted as to the breach of contract claim.

*man*, the Federal Court of Appeals for the Fifth Circuit, recognizing that ambiguities existed "as to the commencement date of the limitations period," held that "the limitations period for a suit for wrongful termination under Article 8307c will commence [i.e., presumably, accrues] when the employee receives unequivocal notice of his termination or when a reasonable person would know of his termination." *Thurman*, 952 F.2d at 134. Therefore, it was incumbent on Appellee to prove, as a matter of law, the date Appellant received unequivocal notice of her termination or when a reasonable person would have known that he was terminated. *Id.* at 134.

■ The summary judgment evidence indicates that Appellant filed suit on April 1, 1991. Based on this date, Appellee contends that its actions, upon which Appellant premises her cause of action, occurred more than two years prior to filing of the suit—i.e., before April 1, 1989. Nevertheless, we find that the record is wholly devoid of any date of "unequivocal termination." On November 20, 1987, a little more than seven months after her injury of April 10, 1987, Appellant was sent a letter stating that she had been placed on "indefinite medical lay-off," and that she had "recall rights as provided under the labor agreement . . . ." The labor agreement provides in pertinent part as follows:

### E. RECALL OF EMPLOYEES FROM LAYOFF

Recall of employees from layoff will be on the basis of Company requirements within the work centers and employees with the greatest seniority will be recalled first.

Moreover, the labor agreement further provides that:

### F. LOSS OF SENIORITY

An employee shall lose his plant seniority under the following conditions:

1. If the employee is discharged for just cause, or

. . . . .

4. Is laid off for twelve (12) consecutive months . . . .

Based on the above provisions, Appellee contends that Appellant knew she would be considered terminated as of November 30, 1988, the date her recall rights expired. However, the labor agreement does not state that one is terminated after twelve months of lay-off, only that they lose seniority rights. In addition, Appellee's purported policy of putting someone on "indefinite medical lay-off" is not delineated in the labor agreement. Thus, it is not possible to tell whether medical lay-off is synonymous with lay-off generally. In fact, Richard G. Gonzalez, Appellee's Personnel Manager, admitted the policy was unwritten. Appellee cannot now argue that Appellant had been unequivocally terminated based on an unwritten policy and a letter that referenced "recall rights" in terms of lay-off, not "medical lay-off."

Finally, Appellee continued to represent to Appellant that she would be recalled to work. On March 28, 1988, after being released to light-duty work, she was told that if her doctor released her to full duty she would be evaluated by the company's doctor, and if they had any openings for which she was eligible, she would be recalled. Later, in March of 1989, when she had been released to work, without restrictions, she was told by Irma Christie of the Appellee personnel department that she would be called. On March 30, 1989, Appellant's attorney, Mark Howell was also informed by Appellee that Appellant was "standing in line" with other employees. Appellant also maintains that the company never told her that she had been terminated.[2] We find that the above summary judgment evidence raises a fact issue concerning when, if at all, Appellant was considered to have been terminated and, therefore, a question as to when the statute of limitations began to run. Appellee has

---

2. Appellant's statement is supported by Appellee's own admissions and answers to interrogatories. In response to Appellant's Request for Admission No. 3 asking Appellee to "Admit that Plaintiff was terminated by you," they answered

"Denied." In addition, in answer to interrogatory No. 18, Appellee stated without qualification that Appellant is "On Medical Lay–Off." This was for the period of January 1, 1987 to May 1, 1991.

failed to conclusively prove its affirmative defense. Accordingly, Points of Error Nos. One through Six are sustained.

In Points of Error Nos. Seven, Eight, Ten, Eleven, and Fifteen, Appellant assigns error to the court's granting of judgment notwithstanding the verdict in favor of Appellee and to the court's action in disregarding the findings of the jury.

■ A motion for judgment notwithstanding the verdict is based upon the same grounds that have been or could have been urged in a motion for directed verdict and the granting of a motion for j.n.o.v. will be sustained on appeal only if a directed verdict would have been proper. TEX.R.CIV.P. 301. *Dodd v. Texas Farm Prods. Co.*, 576 S.W.2d 812, 815 (Tex.1979); *Monk v. Dallas Brake & Clutch Serv. Co.*, 697 S.W.2d 780, 793 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

■ In reviewing the granting of a judgment notwithstanding the verdict, it must be determined that there was no evidence upon which the jury could have made its findings. This Court reviews the evidence in the light most favorable to the findings, considering only the evidence and inferences which support those findings and rejecting evidence and inferences contrary to those findings. *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648, 650 (Tex.1977); *De Los Santos v. Alamo Lumber Co.*, 683 S.W.2d 48, 51 (Tex.App.—San Antonio 1984, no writ). The standard of review is the same when reviewing specific jury findings. *Schaefer v. Texas Employers' Ins. Ass'n*, 612 S.W.2d 199, 201 (Tex.1980).

The questions the jury answered were as follows:

QUESTION NUMBER ONE:

Did the conduct of Johnson & Johnson, Inc. constitute a fraud against Martha Sanchez that was a proximate cause of damages to her?

ANSWER: Yes.

QUESTION NUMBER TWO:

What sum of money, if any, if paid now in cash, would reasonably compensate Martha Sanchez for her damages proximately caused by the fraud, if any, by Johnson & Johnson Medical, Inc.?

. . . . .

(a) Lost wages and benefits in the past (between the date of the fraud, if any, and today).

ANSWER: $50,000.00.

(b) Lost wages and benefits in the future.

ANSWER: $75,000.00.

(c) Martha Sanchez' mental anguish.

ANSWER: $75,000.00.

QUESTION NUMBER THREE:

Was the conduct of Johnson & Johnson Medical, Inc., that you found in answer to question no. 1 done with a conscious indifference for the rights of Martha Sanchez, or willfully or maliciously?

. . . . .

ANSWER: Yes.

QUESTION NUMBER FOUR:

What sum of money, if any, should be assessed against Johnson & Johnson Medical, Inc. as exemplary damages?

. . . . .

ANSWER: $75,000.00.

■ Appellant had the burden to prove the elements of fraud as follows: (1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; [and] (6) that he thereby suffered injury. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977). Moreover, the representations were promissory in nature and, therefore, Appellant was required to demonstrate that the speaker intended not to perform the promise **at the time it was made.** *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex.1992); *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 728 (Tex.1982).

■ Appellant alleged that Appellee committed fraud by representing the following:

(a) that Appellant's lay-off status was *indefinite;*

(b) that Appellant had recall rights as provided under the labor agreement;

(c) that light duty work was not available;

(d) that if her doctor releases her to full duty she would be evaluated by the company doctor and if they had any openings for which she is eligible she will be recalled, otherwise to remain on lay-off,

(e) that she would be given a job if she brought in a full duty release; or

(f) that she was standing in line for a job.

Appellee contends that there is no evidence "that any of the alleged representations by its employees Gonzalez and Powell were false, that the employees knew they were false, that Appellant relied on the representations, or that Appellant suffered any injury from any reliance." But the essence of the evidence in total is that Appellee made representations to Appellant that she could come back to work, and that she still had a job, when in fact they listed her as terminated only seven months after her injury.

▮▮▮ As set out above, Appellant was sent a letter on November 20, 1987 that informed her she had been placed on "indefinite medical lay-off" and that she had "recall rights." Just ten days later, on November 30, 1987, although Appellant was ostensibly on medical lay-off, Nellee Powell listed Appellant as **terminated** and further testified that she regarded it as a "termination whether it was lay-off or not." This is "some evidence" that medical lay-off was synonymous with termination and that any subsequent representations were false as Appellee had no intention of bringing Appellant back to work. In addition, there is some evidence that "light duty" positions were available although Appellant was told otherwise. Finally, in view of the evidence that out of all the persons placed on medical lay-off only one was ever called back, there is an inference that Appellee was placing persons on medical leave as a subterfuge for actual termination. Appellant further suffered injury by not seeking full-time employment believing she would be recalled to her job with Appellee. In addition, she testified that after working for a time "touching up baskets at La La Imports," she searched for other jobs but was only able to secure employment as a housekeeper at $4.50 (later $4.75) an hour. Appellant's testimony is supported by her federal income tax returns for the years 1988–90 which were admitted in evidence. Although it is admittedly difficult to determine the intentions of those making allegedly fraudulent representations, that is not the role of this Court:

> While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made. Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. 'Slight circumstantial evidence' of fraud, when considered with the breach of a promise to perform, is sufficient to support a finding of fraudulent intent.

*Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434–35 (Tex.1986).

The evidence brought out at trial and inferences thereto viewed in favor of Appellant, circumstantial though they may be, are at least "some evidence" of fraud on the part of Appellee. Moreover, this holding of some evidence to induce Appellant by a false representation is some evidence of conscious indifference and will support a finding of exemplary damages. *Spoljaric,* 708 S.W.2d at 432, 434–35. The jury's finding of conscious indifference is to be given great weight on review because the jurors are in a position to observe witness credibility and demeanor. *LaCoure v. LaCoure,* 820 S.W.2d 228, 235 (Tex.App.—El Paso 1991, writ denied). Therefore, the judgment notwithstanding the verdict was erroneous and the trial court improperly disregarded questions "one" and "three." Consequently, Appellant's Points of Error Nos. Seven, Eight, Ten, and Eleven are sustained.

▮▮▮ Having found that the trial court entered an erroneous judgment notwith-

standing the verdict, we must reverse the trial court's judgment and enter judgment in harmony with the verdict, **unless** the appellee presents by cross-points grounds sufficient to vitiate the jury's verdict or those that would prevent affirmance of the judgment had one been entered on the verdict. *Miller,* 568 S.W.2d at 652; *De Los Santos,* 683 S.W.2d at 51; TEX.R.CIV.P. 324(c). The appellee should raise such cross-points when complaining of an action or ruling by the trial court that the appellee alleges constituted error as to him. *See Houston First American Savings v. Musick,* 650 S.W.2d 764, 770 (Tex.1983); *Jackson v. Ewton,* 411 S.W.2d 715, 717 (Tex.1967); *First Nat'l Indem. Co. v. First Bank,* 753 S.W.2d 405, 409 (Tex. App.—Beaumont 1988, no writ) (Brookshire, J., concurring). Finally, as in the instant case, when the trial court does not specify in the judgment notwithstanding the verdict the ground upon which it relied in entering the judgment, the appellant is not required to challenge the judgment on each ground asserted in the j.n.o.v. motion. *Voskamp v. Arnoldy,* 749 S.W.2d 113, 118 (Tex.App.— Houston [1st Dist.] 1987, writ denied).

 Here, however, Appellee does not raise any cross-points, and in Points of Error Nos. Nine, Twelve, Thirteen, and Fourteen, Appellant does challenge the j.n.o.v. on grounds that were in the motion but were not specifically relied upon by the trial court. Therefore, although these points appear to constitute error as to Appellee, and should have been raised by cross-point, we will nevertheless liberally construe Appellee's reply

points to Appellant's points of error as cross-points and consider them. *See First Nat'l Indem.,* 753 S.W.2d at 409 (Brookshire, J., concurring).

 Appellant's Point of Error No. Nine asserts the trial court erred in granting the j.n.o.v. based upon Appellee's assertion that Appellant's claim for fraud is preempted by federal law.[3] Appellee argues that Appellant's cause of action is governed by § 301 of the Labor Management Relations Act ("LMRA") which provides:

> Suits for violation of contracts between an employer and a labor organization in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. The United States Supreme Court explained the purpose of the preemptive effect of § 301 in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985) [quoting *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962) ] stating that "the 'dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy.'" Furthermore, the Court concluded: " 'in enacting § 301 Congress intended doctrines of federal

---

**3.** Although the propriety of this court's review of the preemption question and of the federal district court's remand of the case to state court is not questioned by either party, it is nevertheless legally permissible for this Court to determine the preemption issue at this stage of the proceedings. The "well-pleaded complaint" doctrine, followed by the federal courts will prevent removal to federal court of some claims that nonetheless are preempted by federal law. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 397–98 and n. 12, 107 S.Ct. 2425, 2432–33, and n. 12, 96 L.Ed.2d 318 (1987). Moreover, a federal court's decision to remand an action to state court does not control (and may not even address) the substantive question of preemption. *Schacht v. Caterpillar, Inc.,* 213 Ill.App.3d 169, 157 Ill.Dec. 196, 199, 571 N.E.2d 1215, 1218 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1306, 117

L.Ed.2d 527 (1992). In fact, unless an area is determined to be "completely preempted" by federal law, the federal court lacks jurisdiction and remand to the state court is required. 28 U.S.C. § 1447(c). In addition, the remand order would not be reviewable by "appeal or otherwise" in the federal system. 28 U.S.C. § 1447(c). *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 346, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976). Thus, a "preemption defense," as opposed to "complete preemption," does not require removal or prevent remand. This question is "then a matter for the state court to determine as a part of the trial proceedings." *Whitman v. Raley's, Inc.,* 886 F.2d 1177, 1181 (9th Cir.1989); *see also Soley v. First Nat.l Bank of Commerce,* 923 F.2d 406, 408–10 (5th Cir. 1991).

labor law to prevail over inconsistent local rules.'" *Id.,* 471 U.S. at 209–10, 105 S.Ct. at 1910–11; 369 U.S. 95, 82 S.Ct. 571.

In *Allis–Chalmers,* the Court also delineated the standard by which a cause of action is determined to be preempted, holding, "when resolution of a state law claim is *substantially dependent* upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, [citations omitted] or dismissed as preempted by federal labor-contract." *Id.,* 471 U.S. at 220, 105 S.Ct. at 1915; 369 U.S. 95, 82 S.Ct. 571; *see also Int'l Brotherhood of Elec. Workers v. Helcher,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2166 n. 3, 95 L.Ed.2d 791 (1987); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (preemption is not present where employee's complaint; (1) does not seek to enforce the collective bargaining agreement, (2) is not substantially dependent upon interpretation of the collective bargaining agreement, and (3) does not rely upon the collective agreement). But, the court also noted "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301...." *Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. at 1911; 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593. The application of state law is pre-empted by § 301 only if such application requires interpretation of the collective-bargaining agreement itself. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

While Appellee claims that all the alleged misrepresentations require an interpretation of the bargaining agreement, only two of the alleged representations (i.e., that her lay-off status was indefinite and that she had recall rights) are even "tangentially" related. However, as with the other alleged fraudulent statements, it is clear that Appellant is not complaining that Appellee misrepresented to her the nature of the rights she had under the labor agreement. Rather, she asserts that Appellee generally misrepresented to her that she was still employed when they informed her she was on "indefinite medical lay-off" and that she had "recall rights" when in fact she had no rights because she had

been previously terminated. To determine the fraud cause of action, it was not necessary to interpret the labor agreement. All that was required was a determination of whether the statements made to Appellant were fraudulent. Point of Error No. Nine is overruled.

■ In Point of Error No. Twelve, Appellant contends the trial court erred in disregarding the jury's answers to questions numbers "one" and "two" on the basis that the claim for fraud is barred by the Statute of Frauds as a matter of law. In response, Appellee argues that because Appellant sought to recover lost wages and benefits in the future, her action as to these damages must be treated as a contract claim subject to the Statute of Frauds. However, Appellant has not sued to enforce an oral promise to contract in the future. She was claiming fraud regarding an employment contract to which she was allegedly a party. Therefore, any promises made concerning future actions were not promises to contract in the future, but rather were promises to act in accordance with what Appellant believed and was lead to believe was an *existing* contract. Moreover, even in oral employment contract cases, "merely requesting damages for a period greater than one year will not bring a cause of action for breach" under the Statute of Frauds. *Goodyear Tire and Rubber Co. v. Portilla,* 836 S.W.2d 664, 670 (Tex.App.—Corpus Christi 1992, writ granted); *Hardison v. A.H. Belo Corp.,* 247 S.W.2d 167, 168–69 (Tex.App.—Dallas 1952, no writ). We overrule Point of Error No. Twelve.

■ In Point of Error No. Thirteen, Appellant assigns as error the trial court's disregarding of the jury's answers to questions 2(a) and (b). Appellant asserts the trial court erred in disregarding this question on the basis that "benefit of the bargain" damages are not recoverable in Texas for common law fraud. It is Appellee's contention that "lost wages" and "benefits" represent "benefit of the bargain" damages and, further, that such damages are not recoverable for fraud. Specifically, Appellee argues that "recovery for misrepresentation is limited in Texas to the actual injury suffered as a re-

sult of the misrepresentation, not what would have been gained had the representation been true."[4]

In order to recover damages in a fraud cause of action, one must plead and prove a pecuniary loss that is "directly traceable to and which resulted from the false representation" relied upon, *C & C Partners v. Sun Exploration and Prod. Co.*, 783 S.W.2d 707, 718 (Tex.App.—Dallas 1989, writ denied). In addition, speculative losses and lost profits are not recoverable in an action for fraud. *Id.* However, Texas law does not provide, as Appellee asserts, that benefit of the bargain damages are likewise unrecoverable. In fact, there is authority indicating otherwise. *Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex.1984); *Airborne Freight Corp. v. C.R. Lee Enterprises, Inc.*, 847 S.W.2d 289 (Tex.App.—El Paso 1992, writ pending). In *Leyendecker*, the Texas Supreme Court stated,

> Texas courts have recognized two measures of damages for misrepresentation. Texas common law allows an injured party to recover the actual injury suffered measured by 'the difference between the value of that which he has parted with, and the value of that which he has received.' *George v. Hesse*, 100 Tex. 44, 93 S.W. 107 (1906). This measure of damages is known as the "out-of-pocket" measure and is calculated as of the time of sale. W. Prosser, *Handbook of the Law of Torts* Sec. 110 (4th ed. 1971). The second remedy available in Texas, known as the 'benefit-of-the bargain' measure, allows the plaintiff to recover the difference between the value as represented and the actual value re-

ceived. *Johnson v. Willis*, 596 S.W.2d 256, 262 (Tex.Civ.App.—Waco), *writ ref'd n.r.e. per curiam*, 603 S.W.2d 828 (Tex.1980).

But, the rule set out in *Leyendecker* was determined in the context of alleged violations of the Deceptive Trade Practice and Consumer Protection Act (DTPA). Moreover, neither of the measures set out in *Leyendecker* seem to contemplate the situation in the instant case—i.e., where there is no transfer of property that resulted in a loss.

The Texas Supreme Court has held that benefit of the bargain damages are *not* recoverable for **negligent** misrepresentation, *see Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) and *Airborne Freight Corp.*, 847 S.W.2d at 295 [both citing Restatement (Second) of Torts § 552B (1977)]. Moreover, in denying recovery in *Sloane*, the Supreme Court specifically equated benefit of the bargain damages with lost profits. *Sloane*, 825 S.W.2d at 443. Therefore, reading the *Sloane* analysis together with current Texas law denying recovery of lost profits in fraud cases generally, benefit of the bargain damages are arguably not recoverable in an action for fraudulent misrepresentation, unless there has been a loss based on a transfer of property or as the result of bargaining transaction involving the transfer of something of value. *McClure v. Duggan*, 674 F.Supp. 211 (N.D.Tex.1987).[5] Nevertheless, as in the instant case, when there has been fraud in the employment relationship, damages in the form of lost wages and benefits would appear to be the only appropriate remedy.[6] In addition, with the

---

4. As outlined above, Appellant sought lost wages and benefits both from the time of the fraud until trial [Question 2(a)] and in the future [Question 2(b)]. The damages awarded in Question 2(a) are not benefit of the bargain because they do not amount to the expectation damages that Appellant would have received had she been recalled. Therefore, the analysis under this point will only address the propriety of the damages representing lost wages and benefits in the future.

5. This is in accord with the Restatement (Second) of Torts which specifically provides in relation to Fraudulent Misrepresentation;

 (2) The recipient of a fraudulent misrepresentation in a **business transaction** is also entitled

to recover additional damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty. Restatement (Second) of Torts § 549(2).

In addition, benefit of the bargain damages are recoverable in other jurisdictions for fraudulent misrepresentation. *See Sloane*, 825 S.W.2d at 444 (Mauzy, J., concurring).

6. For instance, in a suit for wrongful termination under Article 8307c of the Worker's Compensation Statute, awards for lost future wages and benefits are permitted. *General Elec. Co. v. Kunze*, 747 S.W.2d 826, 831 (Tex.App.—Waco 1987, writ denied) (claim for lost future wages and benefits was supported by employee's testi-

availability of consequential damages seemingly limited, to deny Appellant recovery would allow Appellee to commit fraud with impunity.[7] Appellant's Point of Error No. Thirteen is sustained.

 In her fourteenth point, Appellant complains of the trial court's disregarding of question 2(c) which awarded her mental anguish damages. Appellee contends that mental anguish damages are not recoverable in a fraud action.

 Only one Texas case had expressly allowed recovery of mental anguish damages in a fraud action. *Kneip v. UnitedBank–Victoria,* 734 S.W.2d 130, 136 (Tex.App.—Corpus Christi 1987, no writ). In *Kneip,* the court based its holding on the well-settled rule espoused by the Texas Supreme Court allowing mental anguish damages for intentional torts, *see Farmers and Merchants State Bank v. Ferguson,* 617 S.W.2d 918, 921 (Tex.1981), and further emphasized "an injured party is entitled to recover in a tort action those damages that result directly, naturally and proximately from fraud." *Id.; see also Kneip v. UnitedBank–Victoria,* 774 S.W.2d 757, 760 (Tex.App.—Corpus Christi 1989, no writ) (jury's finding of zero damages for mental anguish affirmed). In view of Texas law permitting recovery of mental anguish damages for intentional torts, we find that the jury's award should not have been disregarded, and sustain Appellant's Point of Error No. Fourteen.

In her fifteenth and final point, Appellant complains that the trial court erred in disregarding question number four that awarded exemplary damages. Appellant asserts this as error because the trial court did so based on its disregarding of the questions two and three. Having found that the trial court erred in disregarding the responses to jury questions two and three, we find the trial court erred in disregarding question number four that related to exemplary damages.

Appellant's Point of Error No. Fifteen is sustained.

Having sustained Appellant's Points of Error Nos. One through Six, the judgment of the trial court is reversed and the cause remanded as to Appellant's retaliatory discharge claim; and the judgment of the trial court granting judgment notwithstanding the verdict in favor of Appellee is reversed and judgment is rendered in favor of Appellant as to her fraud cause of action and damages under jury questions one through four.

---

mony that he wanted to work for employer for the rest of his life and economic witnesses' use of mortality table to find that employee had 15–year life expectancy).

7. It should be noted, however, one may not obtain double recovery by receiving damages for breach of contract and fraud which are identical. And injury for fraud must be established apart from damages suffered as a result of breach of contract. *C & C Partners,* 783 S.W.2d at 718–19.