**JOHNSON & JOHNSON MEDICAL, INC.**
**f/k/a Surgikos, Inc., Petitioner,**

v.

**Martha SANCHEZ, Respondent.**

**No. D–4202.**

Supreme Court of Texas.

Argued Sept. 20, 1995.

Decided June 14, 1996.

Rehearing Overruled Aug. 14, 1996.

Stephen F. Fink, Steven W. Sloan, Dallas, for petitioners.

Steven C. James, El Paso, for respondent.

ENOCH, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, CORNYN, and SPECTOR, Justices, join.

The motion for rehearing is overruled. Our opinion of November 16, 1995, is withdrawn and the following is substituted in its place.

This is a wrongful termination case. Because we agree that there is a fact issue

regarding when Martha Sanchez's cause of action under former article 8307c of the Texas Workers' Compensation Act [1] accrued, we affirm the court of appeals' judgment in part and remand her article 8307c claim to the trial court for further proceedings. But because we conclude that there is no evidence of fraud, we reverse the court of appeals' judgment in part and render judgment that Sanchez take nothing on her fraud claim.

Sanchez worked for Johnson & Johnson Medical, Inc., f/k/a Surgikos, Inc., as a material handler. Although Sanchez was not a member of the union at Johnson & Johnson, a collective bargaining agreement governed her employment there. Sanchez suffered an on-the-job injury on April 10, 1987, and shortly thereafter began a medical leave of absence. On November 20, 1987, after 120 days on medical leave, Johnson & Johnson placed Sanchez on "indefinite medical layoff," but also informed her that she had recall rights. On several occasions, employees of Johnson & Johnson informed Sanchez that while there was no job currently available, she would be called back for the next available job. Johnson & Johnson never called Sanchez back to work.

On April 1, 1991, Sanchez filed suit against Johnson & Johnson, alleging violations of article 8307c. Article 8307c prohibits discrimination against an employee because the employee filed a workers' compensation claim. *See* Act of May 7, 1971, 62nd Leg., R.S., ch. 115, § 1, 1971 Tex.Gen.Laws 884–85 (repealed 1993) (current version at Tex.Lab. Code § 451.001). Sanchez later amended her pleading to add claims for fraud and breach of contract. The trial court granted summary judgment on Sanchez's article 8307c claim, concluding that it was barred by the statute of limitations. After trial, but before jury deliberations, the court granted a directed verdict against Sanchez on her breach of contract claim.[2] Finally, after the jury returned a $275,000 verdict in favor of Sanchez on her fraud claim, the trial court

rendered judgment notwithstanding the verdict in favor of Johnson & Johnson.

The court of appeals reversed the summary judgment on Sanchez's article 8307c claim, holding that Johnson & Johnson failed to conclusively prove either that Sanchez received unequivocal notice of her termination or when a reasonable person would have known that she had been terminated. 860 S.W.2d 503, 509–10. The court of appeals reversed the judgment notwithstanding the verdict with regard to Sanchez's fraud claim, holding that there was some evidence of actionable fraud, *id.* at 511, that the fraud claims were not preempted, *id.* at 512–13, and that benefit-of-the-bargain damages and mental anguish damages were recoverable for fraud. *Id.* at 514–15. Finally, the court of appeals held that Sanchez could recover exemplary damages. *Id.* at 515.

**I**

■ Johnson & Johnson first asserts that the trial court correctly granted summary judgment on the ground that Sanchez's article 8307c claim was barred by the statute of limitations. We disagree.

■ When a party moves for summary judgment based upon an affirmative defense, the movant must establish each element of its defense as a matter of law. *Munoz v. Gulf Oil Co.,* 693 S.W.2d 372, 373 (Tex.1984). A suit for violation of article 8307c must be filed within two years after such cause of action accrues. *See Almazan v. United Servs. Auto. Ass'n,* 840 S.W.2d 776, 780 (Tex. App.—San Antonio 1992, writ denied). Thus, in order to prevail on its motion for summary judgment, Johnson & Johnson is required to show that Sanchez did not file suit within two years of the accrual of her article 8307c claim.

**A**

■ To determine whether Sanchez timely filed her article 8307c claim, we must first determine when that claim accrued. In con-

---

1. Act of May 7, 1971, 62nd Leg., R.S., ch. 115, §§ 1–3, 1971 Tex.Gen.Laws 884–85 (repealed 1993) (current version at Tex.Lab.Code §§ 451.001–.003).

2. Sanchez has waived any claim that the trial court erred by granting the directed verdict on her breach of contract claim because she did not assign this as error in the court of appeals.

sidering when an article 8307c claim accrued, the court in *Thurman v. Sears, Roebuck & Co.* examined when a cause of action accrued under the Age Discrimination in Employment Act. 952 F.2d 128, 133 (5th Cir.), *cert. denied,* 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992). The Fifth Circuit held that "the limitations period for a suit for wrongful termination under article 8307c will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of his termination." *Id.* at 134. In coming to its conclusion, the Fifth Circuit relied heavily on *Bonham v. Dresser Indus., Inc.,* 569 F.2d 187 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). As noted in *Thurman,* the *Bonham* court was suspect of any rule that focused on the employer's termination date, reasoning:

> [A] company may use different termination dates for different purposes.... Moreover, we would be wary of any approach which determines the timeliness of an employee's suit against his employer solely on the basis of records which are within the exclusive control of the employer. On the other hand, we would also view with disfavor a rule that penalizes a company for giving an employee periodic severance pay or other extended benefits after the relationship has terminated rather than severing all ties when the employee is let go.

*Bonham,* 569 F.2d at 191–92; *see also Luna v. Frito–Lay, Inc.,* 726 S.W.2d 624, 628 (Tex. App.—Amarillo 1987, no writ) ("accrual of an action for termination of employment under federal statutes occurs when the employee is informed that his employment will be terminated, not when it actually is terminated"). The *Thurman* court observed that this unequivocal notice or reasonable knowledge of termination threshold adequately addressed the concerns raised in *Bonham* and would "serve to eliminate ambiguities as to the commencement date of the limitations...." *Thurman,* 952 F.2d at 134. We agree with the Fifth Circuit that this threshold "should be utilized in determining when facts exist authorizing a claimant to seek judicial relief for wrongful termination under article 8307c." *Id.* A cause of action for wrongful termination under article 8307c accrues when the employee receives unequivocal notice of his or her termination or when a reasonable person should have known of his or her termination.

**B**

Having determined when a cause of action under article 8307c accrues, we must now consider whether Johnson & Johnson has carried its summary judgment burden on this issue. In this context, we follow the well-established standards for reviewing a summary judgment. They require us to take the evidence favorable to Sanchez as true and to indulge every reasonable inference in her favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Johnson & Johnson, through Sanchez's supervisor, informed Sanchez on November 20, 1987, that she had been placed on "indefinite medical layoff." After that, Johnson & Johnson repeatedly represented to Sanchez that if she produced a doctor's release she would be recalled and would receive the first job available. Johnson & Johnson never unequivocally informed Sanchez that she had been "terminated." And as late as March 27, 1989, management personnel at Johnson & Johnson told Sanchez that she would be called back for employment when there was a job opening.

We initially recognize that the term "layoff," notwithstanding the possibility of recall or rehire, is generally considered synonymous with a "termination." *See Dring v. McDonnell Douglas Corp.,* 58 F.3d 1323, 1328 (8th Cir.1995); *Teumer v. General Motors Corp.,* 34 F.3d 542, 550 (7th Cir.1994); *Kuemmerlein v. Board of Educ. of Madison Metro. Sch. Dist.,* 894 F.2d 257, 260 (7th Cir.1990); *Lawson v. Burlington Indus., Inc.,* 683 F.2d 862, 863–64 (4th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). However, Johnson & Johnson did not lay off Sanchez. It placed her on "indefinite medical layoff." Moreover, the evidence indicates that only Johnson & Johnson management were familiar with and used the term "indefinite medical layoff."

Contrary to the term "layoff," which is included in the collective bargaining agree-

ment and is given virtually the same effect as a termination, "indefinite medical layoff" is not a term contained in any Johnson & Johnson collective bargaining agreement, employee handbook, or personnel policy. In fact, Richard Gonzalez, the personnel manager, testified that Johnson & Johnson's indefinite medical layoff policy was a separate unwritten policy he created. Johnson & Johnson also effectively conceded that "indefinite medical layoff" connotes something other than "layoff" because it denied that it had terminated Sanchez in a response to a request for admission while concomitantly explaining that it denied this request for admission because it placed her on "indefinite medical layoff." Finally, Johnson & Johnson's records indicated that Sanchez was *still* on indefinite medical layoff as late as May 1, 1991. From all appearances, the designation "indefinite medical layoff" represented, and was intended to represent, a classification different from the "layoff" classification listed in the collective bargaining agreement. On this record, Sanchez cannot be charged, as a matter of law, with reasonably knowing that she had been terminated more than two years before she filed suit. Accordingly, there is a question of fact regarding when Sanchez's article 8307c claim accrued, and, thus, whether such claim was timely filed. *See Thurman,* 952 F.2d at 134.

■ Before concluding, we note that when determining the time at which a cause of action accrues "in discrimination cases, '[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts [result in termination].'" *Specialty Retailers, Inc. v. DeMoranville,* —— S.W.2d ——, ——, 1996 WL 242611 (Tex.1996) (quoting *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)) (first modification in original). In *DeMoranville,* the plaintiff alleged that her supervisor discriminated against her by favoring younger workers and continually criticizing her. After taking a medical leave of absence, the senior

vice president of human resources informed the plaintiff that she would be fired if her leave lasted longer than a year. Approximately one year later, the plaintiff's employer terminated her. The plaintiff filed an age discrimination complaint with the Texas Commission on Human Rights (TCHR) within 180 days after her termination.[3] This Court held that the plaintiff did not timely file a complaint with the TCHR because her claim accrued when she was informed of the allegedly discriminatory employment decision, not when she was terminated one year later. The decision to terminate the plaintiff was simply an "effect of past discrimination." *Id.* at ——, *2. In contrast, Sanchez alleges in the present case that her termination from Johnson & Johnson constituted the discriminatory conduct in violation of article 8307c. She does not allege that she was discriminated against by being placed on indefinite medical layoff in 1987 or by not being recalled for light duty work in 1988. The only discriminatory event Sanchez sues upon is her termination. As we have held, fact issues exist concerning when Sanchez should have reasonably known that she had been terminated for illegitimate reasons. *DeMoranville* does not dictate a different result.

## II

■ Johnson & Johnson next asserts that there is no evidence of fraud. We agree.

■ The trial court rendered judgment notwithstanding the verdict with regard to Sanchez's fraud claims in favor of Johnson & Johnson. In reviewing such judgments, this Court evaluates the evidence in the light most favorable to the jury's findings, considering only the evidence and inferences which support those findings and disregarding evidence and inferences contrary to those findings. *Miller v. Bock Laundry Mach. Co.,* 568 S.W.2d 648, 650 (Tex.1977). To recover for fraud, Sanchez bears the burden to prove the existence of the following: "a material

---

3. A complaint of unlawful employment practices must be filed with the Equal Employment Opportunity Commission or the Texas Commission on Human Rights within 180 days after the alleged unlawful employment practices occurred. Tex.

Lab.Code § 21.202. This time limit is mandatory and jurisdictional. *DeMoranville,* —— S.W.2d at ——, *2; *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485–86 (Tex.1991).

misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991).

We focus on the reliance element of Sanchez's fraud claim. Sanchez did not present any evidence that she relied to her detriment on any representation made by Johnson & Johnson, such as turning down other offers of employment. Indeed, Sanchez obtained other employment during the period in question. Consequently, we hold there is no evidence of the reliance element of Sanchez's fraud claim and, thus, reverse in part the judgment of the court of appeals.

\*     \*     \*     \*     \*     \*

Because we agree that there is a question of fact with regard to when Sanchez received unequivocal notice or should have known of her termination, we affirm the court of appeals' judgment in part and remand her article 8307c claim to the trial court for further proceedings in conformity with this opinion. But because we conclude that there is no evidence of fraud, we reverse the court of appeals' judgment in part and render judgment that Sanchez take nothing on her fraud claim.[4]

OWEN, J., filed an opinion concurring in part and dissenting in part, in which HECHT, BAKER and ABBOTT, JJ., join.

OWEN, Justice, concurring in part and dissenting in part.

On motion for rehearing, the opinion of November 16, 1995, is withdrawn and the following substituted in its place.

I respectfully dissent from the Court's judgment remanding this case for a new trial. I would hold that the cause of action for wrongful termination under article 8307c of the Texas Revised Civil Statutes is barred by limitations. The evidence establishes as a

matter of law that Sanchez knew she had been terminated more than two years before suit was filed. Similarly, Sanchez's claim is untimely under the Court's test of when a reasonable person would have known of the termination. The two year statute of limitations under section 16.003(a) of the Texas Civil Practice and Remedies Code governs.

Sanchez filed suit on April 1, 1991. She had sustained an on-the-job injury on April 10, 1987, and was unable to return to work for an extended period of time. In November 1987, her employer Johnson & Johnson advised her in writing that she had been placed on "indefinite medical lay-off." In the same letter, she was told that medical benefits for her and any covered dependents would terminate at the end of that month. These benefits did in fact terminate. Irrespective of any ambiguity that may have been conveyed when Sanchez was told that her medical lay-off was "indefinite," Sanchez unmistakably knew more than three years before suit was filed that she no longer had a job with or any source of income from Johnson & Johnson.

Sanchez's own actions confirm this. In March 1988, three years before suit was initiated, Sanchez filed for and received unemployment benefits. She did so after contacting Johnson & Johnson about going back to work. At that time, Sanchez had been released by her doctor to perform only "light duty" functions. Sanchez was told by Johnson & Johnson that there were no "light duty" positions available. There is evidence this statement was untrue, but that does not undercut the uncontroverted evidence which establishes as a matter of law that Sanchez knew or should have known more than two years before she filed suit that she was no longer employed by Johnson & Johnson. She had received no compensation or other benefits since November 1987, and she sought and obtained unemployment compensation.

The following year, in March 1989, Sanchez received authorization from her doctor

---

4. Because we hold there is no evidence of fraud, we need not address Johnson & Johnson's other points of error.

to return to regular, full-time employment. She then filled out an application seeking employment by Johnson & Johnson. She completed this application on March 27, 1989, more than two years before suit was filed. The application inquired if she had ever worked for Johnson & Johnson or its affiliates. She checked the "yes" box and in her own handwriting indicated "Surgikos 1981– 1987," affirming once again that she knew her employment with Johnson & Johnson had terminated in 1987. (Surgikos was the affiliate of Johnson & Johnson for whom Sanchez worked at the time of her injury.)

The Court points out that Johnson & Johnson denied that it had terminated Sanchez in response to a request for an admission. The Court concludes that this discovery response is a concession by Johnson & Johnson that "indefinite medical layoff" meant something other than "layoff." 924 S.W.2d at 927. The denial of this request for admission should not be viewed in isolation from the answer to the interrogatory that was coupled with it. Johnson & Johnson was asked and responded as follows:

*REQUEST FOR ADMISSION NO. 3:*

Admit that Plaintiff was terminated by you.

*ANSWER:*

Denied.

*INTERROGATORY NO. 9:*

If you have denied Request for Admission No. 3, set forth in detail each and every fact that forms the basis for your denial.

*ANSWER:*

Plaintiff was unable to return to work after more than six months on leave of absence. Plaintiff was then placed on medical layoff status effective November 30, 1987. During this layoff plaintiff had recall rights for one year. Plaintiff maintained that she was fully disabled during that time and was not recalled. Plaintiff's right of recall terminated on November 30, 1988.

These responses do not raise a fact issue on the meaning of "indefinite medical layoff." The interrogatory response reflects that Sanchez was laid off effective November 30, 1987. Whether this was a "medical" or other "layoff" is immaterial to the question of whether Sanchez continued in the employment of Johnson & Johnson. She did not. She did continue to have certain recall rights under the collective bargaining agreement, and that fact is also reflected in the foregoing response. Reading these discovery responses in a light most favorable to Sanchez, the most that can be said is that Johnson & Johnson conceded that Sanchez's employment and right of recall ended no later than November 30, 1988. This date is more than two years prior to the date she filed suit.

There are two related but separate claims in this case: wrongful termination and fraud based on alleged misrepresentations that Sanchez would be rehired. The Court has confused the question of when Sanchez knew she was terminated, which is pertinent to her cause of action for wrongful termination, with the question of when she knew she would not be rehired, which relates to her claim of fraud. Again viewing the evidence in a light most favorable to Sanchez, representatives of Johnson & Johnson made statements to Sanchez to the effect that she would be considered for recall or rehire. The evidence reflects that at least until March 30, 1989, Sanchez may have been led to believe that she would be rehired. But that is a different issue from whether she knew she had been terminated. The distinct representations allegedly made as to whether she would be recalled or rehired do not and cannot undercut Sanchez's knowledge that she had been laid off in November 1987, and that she would receive no further compensation or medical benefits unless rehired. All of the representations in the record and any confusion created by them relate solely to whether Sanchez expected to be rehired or recalled. That is relevant to her fraud claim but not to her cause of action for wrongful termination. Because Sanchez knew more than two years before suit was filed that she had been terminated, her claim under article 8307c is barred by limitations.

I agree with the Court that Sanchez has not made out a case of fraud. As the Court points out, there has been no detrimental reliance on the alleged misrepresentations.

Accordingly, I would affirm the judgment of the trial court in all respects.