COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-07-00187-CV |
| IN RE: | § | Appeal from |
| | § | |
| ESTATE OF BERTHA MAY RUSSELL, DECEASED. | § | 97th District Court |
| | § | of Montague County, Texas |
| | § | (TC # 04-01-0026M-CV) |
| | § | |

**O P I N I O N**

Bertha May Russell executed a will on February 20, 2002. Following her death, the will was admitted to probate in Montague County, Texas. After probate and the appointment of her son, Kenneth Russell, as the independent executor, three of Mrs. Russell's granddaughters--Beth Bridgens, Connie Wilkerson, and Harva Kuykendall (collectively Appellees)--filed a will contest challenging her testamentary capacity and alleging undue influence, lack of testamentary intent, and malicious tortious interference with inheritance. A jury found that Mrs. Russell had testamentary capacity at the time she executed the will, but it found undue influence, tortious interference, and malice. The trial court refused to uphold the punitive damages and that part of the verdict was set aside. Kenneth Russell brings this appeal and, in five points of error, challenges the jury's findings. We affirm.

**FACTUAL BACKGROUND**

Because of the familial relationships, we shall refer to the parties by their given names, for the most part. Bertha May Russell was born in 1903 and died on November 20, 2003. She and her

husband, E.P. Russell, were the parents of Kenneth Russell, Clois Russell, and Eva Lou Kuykendall. E.P. Russell died in 1984. Eva Lou is the mother of the Appellees and she passed away on December 19, 2001. Kenneth has two sons, Danny and William. Clois was described by Kenneth Russell as being unable to function without help, "he can't read nor write, and he has this saliva control problem, and he don't understand about things."

Mrs. Russell executed a will prior to 1998 with the assistance of a Texas attorney named Greg Underwood. In procuring the execution, Kenneth contacted Underwood, instructed him as to the contents of the will, and then took his mother to Underwood's office to sign it. Mrs. Russell executed a second will, dated July 6, 1998, and a third will, dated November 27, 2000, both of which were drafted by attorney Brian Powers. Mrs. Russell executed her final will on February 20, 2002. Powers prepared this one as well.

## SUFFICIENCY OF THE EVIDENCE

In Points of Error One, Two, Three, and Four, Kenneth challenges both the legal and factual sufficiency of the evidence to support the jury's findings. We apply the following standards in evaluating his arguments.

## Standards of Review

A no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. *Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 579 (Tex.App.--El Paso 2004, pet. denied). There are two separate "no evidence" claims. *Id.* When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." *Id.* When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *Id.; In*

*re Estate of Livingston*, 999 S.W.2d 874, 876 (Tex.App.--El Paso 1999, no pet.). An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *El Paso Independent School District v. Pabon,* 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.). In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller,* 168 S.W.3d at 822. Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible. *Id.* at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id.* We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id.* at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id.* at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. *Id.* at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id.* The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

Factual sufficiency complaints concede conflicting evidence on an issue, but maintain the

evidence against the jury's finding is so great as to make the finding erroneous. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.--Amarillo 1988, writ denied). We may set aside a verdict only if the evidence is so weak, or is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 242 (Tex. 2001). We are not permitted to pass upon witness credibility, nor will we substitute our judgment for that of the jury even if the evidence would clearly support a different result. Rather, we will sustain the challenged finding if the there is competent evidence of probative force to support it. The fact that we may conclude that the evidence preponderates toward an affirmative answer based on our review of the record is not an appropriate ground for reversal.

## Undue Influence

Appellant first argues there was no evidence or insufficient evidence supporting the setting aside of the 2002 will based upon undue influence. Undue influence implies the existence of testamentary capacity in the testator that was subjected to and controlled by a dominant power or influence. *Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex. 1963); *Green v. Earnest,* 840 S.W.2d 119, 121 (Tex.App.--El Paso 1992, writ denied). Before a will may be set aside on the ground of undue influence, the contestant must prove:

- the existence and exertion of an influence;

- the effective use of that influence to subvert or overpower the mind of the testator at the time the will was executed; and

- the execution of a will which the testator would not have executed but for such influence.

*Rothermel*, 369 S.W.2d at 922; *Green,* 840 S.W.2d at 121.

### *Relevant Facts*

Appellant offers the following arguments with regard to undue influence:

- There was no evidence of opportunity to influence his mother;

- There was no evidence or insufficient evidence to show Mrs. Russell's susceptibility to influence;

- There was no showing that Mrs. Russell's mind and desires were overpowered or subverted at the time of the will execution;

- There was no showing that Mrs. Russell was incapable of changing the 2002 will; and

- The 2002 will disposition was not unnatural considering the circumstances.

- Appellees respond with reference to the following incidents.

**The Underwood Will**: Kenneth admitted that prior to 1998, he contacted Greg Underwood, instructed him as to the will's contents, and then took his mother to Underwood's office. He was, in fact, "the one that dictated what to do and what we wanted."

Q. Okay. Your mother was there?

A. Well, she said you take care of it before we ever went up there -- before we ever went to his office. Said, now, you do -- if they don't want to offer anything, you take care of it because I can't. She said she couldn't function enough to -- she didn't know enough about it, in other words, how to fix it and everything.

Q. Okay. Had she visited with Underwood prior to that?

A. No.

He also confirmed that his mother deferred to him "on all matters," including financial matters.

**Clois' Power of Attorney**: There were numerous contradictions between the testimony of Kenneth and Brian Powers. Powers testified that Clois had the mental wherewithal to legally execute the power of attorney and understood that he needed help. Powers thought that he might have recommended to Clois that he sign a power of attorney. He could not recall Kenneth instructing him to create the document and he doubted that had occurred.

Kenneth, on the other hand, cast doubt on Powers' attorney/client safeguards and described a relationship in which Kenneth called the shots, Powers drafted the documents, and then Powers procured the execution in Kenneth's absence. Kenneth explained that he called Powers and told him that Eva Lou had a power of attorney over Clois and that he wanted to "undo" hers and grant one in his favor. Kenneth then drafted a check from Clois' account made payable to Powers, and Clois endorsed it. Clois had no idea what the document was, he could not have understood what the document was, and "[he] just signed it because [Powers] asked him to sign it."

**Clois' Will:** Kenneth and Powers created another legal document on behalf of Clois and for Kenneth's benefit. Powers testified that Clois had the requisite mental capacity to execute the will, and understood the bounty of his assets, and wanted to execute it. Kenneth testified Clois originally had a will dividing his estate between siblings Kenneth and Eva Lou. When Kenneth became upset with Eva Lou, he called Powers because he "needed to change the will to me because I could divide with her but she wouldn't divide with me." A new will was drafted, leaving all of Clois' estate to Kenneth. As with the power of attorney, Clois endorsed the check to Powers.

**Decedent's File with Brian Powers**: Powers testified that Mrs. Russell's file contained three sticky, Post-It type notes. These were the only items in the file except for unsigned copies of the first three wills (1998, 2000, and 2002). One of the notes bore Kenneth's phone number, but the file did not contain a phone number for Mrs. Russell. The next note referenced a power of attorney that was to be prepared on behalf of Mrs. Russell and it listed Kenneth's address and phone number. The third note read:

> Kenneth Russell, mother's will, add, quote, the round dining room table I am presently using is to go to my grandson, William D. Russell, that's Billy, and then his social security number is on it also.

This specific gift was denoted in the 1998 will and all subsequent wills.

**Decedent's Quality of Fairness**:   Kenneth, Danny Russell, and Connie Wilkerson all testified that Mrs. Russell was fair and equal when it came to her family.  Powers testified that with the exception of the 2002 will, all previous wills were set up to distribute her estate in equal proportion to each of her children, and then to their decedents, *per stirpes*.

*Analysis*

There is ample evidence to show (1) the existence and extension of an undue influence by Kenneth in the procurement of the 2002 will; (2) the effective operation of such influence so as to subvert or overpower the Mrs. Russell's mind when executing the document; and (3) Mrs. Russell would not have executed the will but for Kenneth's influence.  Indeed, some of the strongest testimony came from Kenneth himself.  We overrule Point of Error One.

**Disinheritance**

Kenneth next complains that there was no evidence or insufficient evidence to support the jury's finding that Mrs. Russell did not intend to disinherit her granddaughters.  Historically, Texas courts have treated questions of intent as uniquely within the realm of the fact finder because the determination of an individual's intent in taking a particular action is so dependent on an evaluation of witnesses and credibility.  *See City of Dallas v. Jennings,* 142 S.W.3d 310, 314 (Tex. 2004); *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 378 (Tex. 1993); *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986); s*ee also In re Estate of Steed,* 152 S.W.3d 797, 804 (Tex.App.--Texarkana 2004, pet. denied)(in the context of answering the legal question of a party's domicile, an individual's intent to make a location a permanent home is a fact question); *Guthrie v. Suiter,* 934 S.W.2d 820, 831 (Tex.App.--Houston [1st Dist.]1996, no writ)(summary judgment precluded by fact question regarding testator's capacity and intent following brain surgery); *Russell v. City of Bryan,* 797 S.W.2d 112, 115 (Tex.App.--Houston [14th Dist.] 1990, writ denied)(grantor's intent in

executing deed is a fact question); *Turboff v. Gertner, Aron & Ledet Investments,* 763 S.W.2d 827, 830 (Tex.App.--Houston [14th Dist.] 1988, writ denied)(in contract law, the question of the parties' intent in signing a document is one for the fact finder); *Lee-Emmert v. Macatee, Inc.,* 410 S.W.2d 489, 490 (Tex.Civ.App.-Dallas 1966, no writ)(intent to waive a defense in estoppel context is a fact question); *Manziel v. Williams,* 262 S.W.2d 437, 438 (Tex.Civ.App.--Texarkana 1953, no writ) (whether party possessed the required intent to deceive for purposes of establishing fraud cause of action is a fact question).

Testamentary intent does not depend on the testator's realization that he is making a will, but rather in his intent to express his testamentary wishes in the instrument offered for probate. *Luker v. Youngmeyer*, 36 S.W.3d 628, 630 (Tex.App.--Tyler 2000, no pet.). To determine whether the testator intended a particular document to be a testamentary disposition of his property, the court may consider the facts and circumstances surrounding the instrument's execution. *Id., citing Shiels v. Shiels,* 109 S.W.2d 1112, 1113 (Tex.Civ.App.--Texarkana 1937, no writ).

Appellees point out that the prior wills established their grandmother's intent that they share in her estate. They would have inherited *per stirpes* under either of the previous wills had they been offered to probate. From all the evidence presented, a fair-minded jury could consider the 2002 will "unnatural" in the context of the testimony regarding the fair and equitable treatment Mrs. Russell showed her children and grandchildren. Consequently, we reject Kenneth's argument that the mere execution of the 2002 will is sufficient to establish Mrs. Russell's intent regarding her granddaughters' inheritance. We overrule Point of Error Two.

### Tortious Interference with Inheritance

Kenneth next complains that a directed verdict should have been granted with regard to the tortious interference claim. Texas recognizes a cause of action for tortious interference with

inheritance rights.  *King v. Acker*, 725 S.W.2d 750, 754 (Tex.App.--Houston [1st Dist.] 1987, no writ).  In so holding, the court relied upon the Restatement (Second) of Torts, § 774B (1979):

> One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

*Id*.  Appellees respond that Kenneth, in concert with Powers, established a history of interfering with family inheritances that inured to Kenneth's benefit at Eva Lou's expense.  The conflicting and contradictory testimony between Kenneth and Powers created a reasonable expectation that the jurors would discredit testimony of one or the other.  We agree with Appellees that the evidence was sufficient to enable a reasonable and fair-minded jury to conclude that (1) there was an intended inheritance, and (2) Kenneth tortiously interfered with it.  We overrule Point of Error Three.

### Malice

Kenneth next attacks the jury's finding that his interference with Appellees' inheritance was malicious.  Malice is defined to mean a specific intent by the defendant to cause substantial injury or harm to the claimant.  TEX.CIV.PRAC.&REM.CODE ANN. § 41.001(7)(Vernon 2008).  Specific intent means that the actor desires to cause the consequences of his act, or he believes the consequences are substantially certain to result from it.  *Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex. 1985).  Malice may be proven by direct or circumstantial evidence.  *See Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex. 1998); *Mission Resources, Inc. v. Garza Energy Trust,* 166 S.W.3d 301, 314 (Tex.App.--Corpus Christi 2005, pet. filed).

Once again we agree with Appellees that the evidence was sufficient to enable reasonable and fair-minded jurors to conclude that (1) there was an intended inheritance, and (2) Kenneth tortiously interfered with the inheritance, (3) knowing the consequences, and (4) he specifically intended to cause substantial injury or harm to Appellees by way of his actions.  Kenneth's actions

therefore constituted a show of malice.  We overrule Point of Error Four.

## COSTS OF COURT

In his final issue, Appellant argues that absent the requisite "good faith and just cause" finding, the final judgment incorrectly allows for recovery of costs, and Appellees should not and cannot recover their costs of this suit.  We disagree.

Rule 131 provides that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R.CIV.P. 131.  Kenneth directs us to the Texas Probate Code to support his argument Appellees cannot recover costs without a finding that they have prosecuted this proceeding in good faith and with sufficient cause.  Section 243 provides:

> When any person designated as a executor in a will or an alleged will, or as administrator with the will or alleged will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

TEX.PROB.CODE ANN. § 243 (Vernon's 2003).  As Appellees point out, the judgment merely taxed court costs; it did not grant attorneys' fees or other expenses.  Appellees did not seek fees pursuant to the Probate Code and were not required to plead for costs under Rule 131.  *City of Irving v. Dallas/Fort Worth Int'l Airport Bd.*, 894 S.W.2d 456 (Tex.App.--Fort Worth 1995, writ denied).  Moreover, the judgment taxed costs against Kenneth and Clois individually.  It makes no recitation that the costs are to be paid from the estate.  Consequently, the order does not violate section 243, and since costs were properly awarded pursuant to Rule 131, a finding of "good faith and just cause" was unnecessary.  We overrule Point of Error Five.  Having overruled all issues for review, we affirm the judgment of the court below.

November 18, 2009

                                        ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.