ACCEPTED
12-13-00035-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/12/2015 4:31:02 PM
CATHY LUSK
CLERK

No. 12-13-00035-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
1/12/2015 4:31:02 PM
CATHY S. LUSK
Clerk

# In the
# Twelfth Court of Appeals

**Aaron Jordan, et al,**

*Appellants,*

v.

**Cynthia Kay Lyles,**

*Appellee.*

## APPELLEE'S MOTION FOR REHEARING

GREG SMITH
State Bar No. 18600600
NOLAN SMITH
State Bar No. 24075632
RAMEY & FLOCK, P.C.
100 E. Ferguson, Suite 500
Tyler, TX 75702
Telephone: (903) 597-3301
Facsimile: (903) 597-2413
gsmith@rameyflock.com
nolans@rameyflock.com

J. BRAD MCCAMPBELL
State Bar No. 13358000
CURTIS, ALEXANDER
  MCCAMPBELL & MORRIS, P.C.
P. O. Box 38
Emory, TX 75440
Telephone: (903) 473-227
Facsimile: (903) 473-3069
bmccampbell@cammpclaw.com

**COUNSEL FOR APPELLEE CYNTHIA KAY LYLES**

# Contents

**Page**

List of Authorities ...................................................................................................... ii-iii

The Rehearing Grounds ................................................................................................. 1

The Rehearing Argument ............................................................................................... 1

The Court has not decided a material issue that requires
affirmance – the absence of probative evidence supporting damages ........................... 1

    A.   The plaintiffs had the burden to prove that Cyndi's alleged
         breach caused them damage ....................................................................... 2

    B.   The Plaintiffs failed to meet their damage burden: they elicited
         no proof that Cyndi's alleged breach caused them damages .............................. 4

    C.   Bud never intended an equal distribution of his non-probate assets ............... 11

    D.   The evidence establishes that Bud intended Cyndi to
         receive the annuity proceeds ..................................................................... 15

    E.   If there could be evidence of damages, it would be
         factually insufficient evidence ................................................................... 16

Conclusion and Prayer ................................................................................................. 17

Certificate of Compliance ............................................................................................ 18

Certificate of Service ................................................................................................... 19

# Authorities

**Page**

**Cases:**

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227
(Tex. 2004) ................................................................................................ 10

*Concerned Citizens for Better Ed., Inc. v. Woodley*, 623 S.W.2d 488
(Tex.App.—Texarkana 1981, writ disms'd) .......................................... 2

*Estrada v. Dillon*, 44 S.W.3d 558 (Tex. 2001) ........................................ 17

*Fidelity & Cas. Co. of New York v. Central Bank of Houston*, 672 S.W.2d
641 (Tex.App.—Houston [14th Dist.] 1984, writ rf'd n.r.e.) ................... 2

*Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2010) ............................. 4

*Hoover v. Larkin*, 196 S.W.3d 227 (Tex. App.—Houston
[1st Dist.] 206, pet. denied) ..................................................................... 5

*In re Estate of Russell*, 311 S.W.3d 528 (Tex.App—El Paso
2009, no pet.) .................................................................................. 11, 12, 13

*Longaker v. Evans*, 32 S.W.3d 725 (Tex. App.-San Antonio 2000,
pet. withdrawn) ............................................................................... 4, 5, 6, 7

*MacFarlane v. Nelson*, 2005 WL 22440949 at *9
(Tex. App.-Austin 2005, pet. denied) ................................................. 3, 4

*Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858
(Tex.App.—San Antonio 1997, no writ) ................................................ 2

*Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150
(Tex. 2012) ............................................................................................. 10

*Porras v. Craig*, 675 S.W.2d 503 (Tex. 1984) ....................................... 10

*Sanchez v. Johnson & Johnson Med., Inc.*, 860 S.W.2d 503
(Tex.App.—El Paso 1993) ....................................................................... 2

*State v. $90,235*, 390 S.W.3d 289 (Tex. 2013) ....................................... 1

*Swank v. Cunningham*, 258 S.W.3d 647 (Tex.App.—
Eastland 2008, pet. denied) .......................................................................... 5, 6

**Rules, Statutes and Other Authorities:**

TEX. R. APP. P. 44.1(b) ........................................................................................ 17

TEX. R. APP. P. 47.1 .............................................................................................. 1

**The Rehearing Grounds**

1.      Contrary to Rule 47.1, the Court has failed to decide all issues raised and necessary to a final decision.

2.      There is no evidence (or alternatively factually insufficient evidence) supporting damages and, thus, the record will not sustain a judgment for the plaintiffs.

**The Rehearing Argument**

This Court should grant rehearing to address the determinative issue of damages. And, because there is no evidence of damage, the Court should reinstate a take-nothing judgment.

### *The Court has not decided a material issue that requires affirmance – the absence of probative evidence supporting damages.*

An appellate court must decide all issues that are raised and material to the appeal. TEX. R. APP. P. 47.1; *State v. $90,235*, 390 S.W.3d 289, 294 (Tex. 2013). Here, Cyndi raised three grounds for affirming the trial court's take-nothing judgment: a standing issue, the absence of any fiduciary breach or tort, and the lack of evidence of recoverable damage. *See, e.g.*, Appellee's Br. at iii, 34 (stating, as the third major issue briefed: "There is no evidence Bud (or the plaintiffs) sustained any recoverable damage under either liability theory"). As Cyndi's appellate brief argued, because there is no evidence that the plaintiffs sustained a recoverable damage, the jury's verdict can't sustain a recovery. In other words, the absence of damage proof vitiates the jury's verdict. This is so even if Cyndi technically breached a fiduciary duty by not

1

"inform[ing] [Bud] of all material facts" respecting his straightforward spousal continuations of his wife's annuities. *Cf.* Slip Op. at 10 ("In sum, the record contains no evidence that Cyndi or anyone else specifically discussed any of these three transactions with Bud and informed him of all material facts relating to the transactions.")

This Court has not addressed Cyndi's challenge to the damage case. Rehearing should be granted to afford the necessary, complete analysis of all material appellate issues. And on rehearing, the judgment below should be affirmed on the basis that the absence of damage proof vitiates the verdict, requiring a take-nothing judgment.[1]

## A.  The plaintiffs had the burden to prove that Cyndi's alleged breach caused them damage.

There are essentially two sides to any cause of action seeking money damages: the liability side and the damage side. A plaintiff must prevail on both if he is to recover. Here, the plaintiffs obtained a liability-side win virtually by default: they finagled a jury charge that placed the burden of proof with the defendant as respects liability. On appeal, represented by skilled appellate counsel, they have all but admitted that a proper charge – one correctly applying Texas law – would have required that *they* prove a

---

[1] The Court should treat Cyndi's appellate challenge to the proof of damages as raising a cross-point. TEX. R. APP. P. 38.9; *See, e.g., Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 872 (Tex. App.—San Antonio 1997, no writ)(motion that was incorporated into Appellee's brief would be treated as a cross-point); *Concerned Citizens for Better Ed., Inc. v. Woodley*, 623 S.W.2d 488, 490 (Tex. App.—Texarkana 1981, writ dism's'd)(treating challenge to standing as a cross-point); *Fidelity & Cas. Co. of New York v. Central Bank of Houston*, 672 S.W.2d 641, 645-46 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)(treating arguments for affirming JNOV upon grounds not sustained by the trial court as de facto cross-points); *Sanchez v. Johnson & Johnson Med., Inc.*, 860 S.W.2d 503, 512 (Tex. App.—El Paso 1993)(although appellee raised no cross-points, court would "nevertheless liberally construe Appellee's reply points . . . as cross-points"), rev'd in part on other grounds, 924 S.W.2d 925.

breach of fiduciary duty, not the other way around. This is all the difference. In the context of this case, the burden shift left Cyndi to make a near impossible showing as respects liability. In the normal burden-shifting situation (typically, when a fiduciary has bought for himself one of the ward's assets), the burden to prove the transaction's fairness can be met by showing that the transaction occurred at a market-clearing price. But because there is no market in beneficiary designations, the "fix" was in on liability once the plaintiffs secured their jury charge.

Regardless, the plaintiffs retained the burden to prove damages. *See MacFarlane v. Nelson*, 2005 WL 22440949 at \*9 (Tex. App.-Austin 2005, pet. denied). Specifically, they retained the burden to elicit probative evidence that the technical failure to fully inform Bud "of all material facts" actually caused the alleged damages.[2] The presumption of unfairness that the charge invoked on liability does not spill over into this damage-case inquiry.

To recover for breach of fiduciary duty as a result of a transaction, the plaintiff must prove the defendant's breach caused him damages **even if the defendant bore**

---

[2] In their reply brief, the plaintiffs distinguished between causation and damages. Reply Br. at 31 ("Cyndi contends the jury's damages award is unsupported. . . . [S]he does not contest the element of proximate cause . . .".). While not always so, proof of damage and proximate cause are inseparable here. In this case, the no-evidence attack upon damages is an argument that the plaintiffs failed to prove that they sustained a damage resulting from, i.e., caused by the breach. This will not be so in all cases: in a personal-injury case claiming soft-tissue injury, for example, a defendant might challenge whether the plaintiff had any soft tissue injury, they might instead challenge whether the injury the result of their misconduct or a defect in their product (as opposed to some other cause), or they might raise both such arguments. But here, when Cyndi's brief argued that "there is no probative evidence that Bud would ever have designated the plaintiffs as beneficiaries of his financial accounts" irrespective of the alleged fiduciary breach, *see* appellee's brief at 11, Cyndi attacked the entire damage side of the case, including causation of damage.

**the burden of proving the transaction's fairness**. *Id.* at *9; *see also Haygood v. De Escabedo*, 356 S.W.3d 390, 399 (Tex. 2010) ("A fundamental rule is that 'to recover damages, the burden is on the plaintiff to produce evidence from which the jury may reasonably infer that the damages claimed resulted from the defendant's conduct'"). In *MacFarlane*, the defendant attorney was sued for failing to obtain the plaintiff's written consent before entering into a business transaction with him. *MacFarlane*, 2005 WL 22440949 at *1. The trial court placed the burden on the defendant attorney to justify the transaction but recognized that the burden as respects proof of damages remained on the plaintiff. *Id.* at *8. When the plaintiff failed to present evidence of damage, the trial court granted a directed verdict for the attorney, which the appellate court affirmed because even though the burden had shifted as respects liability, the plaintiff retained his burden to prove damages. *Id.* at *9. Like the plaintiff in *MacFarlane*, the plaintiffs here have failed in their burden to prove recoverable damages. Here, there is no damage proof.

**B.**     **The plaintiffs failed to meet their damage burden: they elicited no proof that Cyndi's alleged breach caused them damages.**

Proof of recoverable damage, in the context of this case, requires more than merely showing that Cyndi breached a fiduciary duty in dealings with Bud relative to the beneficiary designations. *See Longaker v. Evans*, 32 S.W.3d 725, 735 (Tex. App.-San Antonio 2000, pet. withdrawn) (no causal link between defendant's breach of fiduciary duty and any alleged loss to decedent's estate). This is so for the simplest of reasons: If

Bud would have made an identical beneficiary designation even absent any fiduciary breach or tort – that is, if Bud would have named Cyndi his beneficiary no matter how scrupulously she acted towards him (or even if she would have had no involvement in the designations at all) – then the breach was without consequence. *See id.* (no evidence of damage due to defendant's breach of fiduciary duty because all indications are decedent did what she wanted regardless). To sustain a recovery, in contrast, the plaintiff must prove the defendant's conduct to be both (a) a violation of duty (establishing liability) *and* (b) the but-for cause of injury (establishing damage). *E.g., Hoover v. Larkin*, 196 S.W.3d 227, 233 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)(breach-of-fiduciary-duty plaintiff must prove causation to recover actual damages); *Longaker*, 32 S.W.3d at 735; *accord Swank v. Cunningham*, 258 S.W.3d 647, 667 (Tex. App.—Eastland, 2008, pet. denied). Otherwise, there is no basis for a recovery. *Id.*

For the defendant's conduct to be the but-for cause of injury, the conditions much be such that in the absence of that conduct the plaintiff would not have been harmed. *See Longaker*, 32 S.W.3d at 735-36. In *Longaker*, the defendant breached his fiduciary duty to the decedent by precluding the decedent from obtaining financial advice regarding the termination of a trust. *Id.* at 735. The advice, if heeded, could have saved the estate $550,000 in estate taxes. *Id.* Despite the clear breach of fiduciary duty, the court held there was no evidence that the breached caused the estate or its beneficiaries damage because "even if [decedent] acted on bad advice from [defendant] in terminating the trust, all indications are it was what she wanted and there is no

evidence of a contrary intent or that she could have been persuaded to change her mind." *Id.*

Here, given the holding in *Longaker* and this Court's holding, which hinges liability upon Cyndi's failure to inform, the plaintiffs must prove that but for the failure to inform, Bud would have designated them to receive the annuity proceeds. There is no probative evidence of that, direct or otherwise. What is more, the plaintiffs also needed to contend with the facts that (a) Bud consistently, independent of Cyndi's involvement, designated Cyndi as his beneficiary, (b) Bud never designated his estate or any other living descendant as a beneficiary, and (c) Bud's longtime lawyer discussed the annuity designations with Bud when his will was done. These circumstances beg the question of how it might be that Cyndi, merely by failing to inform Bud of something he surely already knew, would have caused Bud to act against his own intention. The plaintiffs have never said. Nor have they denied their burden to prove damage.

Instead, the plaintiffs argued that their burden on damages could be deemed met because, they claim, the annuity proceeds at issue would have defaulted to Bud's estate *if* Bud would somehow have made no beneficiary designation at all. *See* Reply Br. at 32 ("Had Bud not designated Cyndi in the change forms, there would have been no designated beneficiary. Absent Bud's designation of Cyndi as primary beneficiary, then, his annuities would have passed under the terms of his will and codicil."). Plaintiffs invoked this same dreadful damage analysis at trial. *See, e.g.*, 3RR121 (reasoning that if the annuity proceeds had not gone to Cyndi but would have gone to the estate, then

6

Phyllis, Cyndi's half-sister, would have received an eighth). This does not approach a showing that Cyndi caused the plaintiffs damages. In fact it altogether avoids the disputed issue.

As exemplified by *Longaker*, the material question is whether, absent a fiduciary breach (or interference) Bud would have acted differently as respects the annuity proceeds. The plaintiffs don't assert that he would have. Quite cleverly, they instead assume the disputed issue away, substituting the straw-man observation that **if** Bud would have acted differently – if he would have "not designated Cyndi" as his annuity beneficiary – the annuities then would pass to different beneficiaries. Everyone knows that.

The question, however – which the plaintiffs' reply skirts – is whether there is in fact any evidence that Bud actually would have "not designated Cyndi" his beneficiary if she had not participated in the paperwork or had she fully informed him of all material facts (whatever that would have meant). If there is no evidence then there is no proof of a recoverable damage. *See Longaker*, 32 S.W.3d at 735 (no evidence of damage to estate because no evidence defendant's breach of fiduciary duty altered decedent's actions).

One problem in the plaintiffs' damage case arises instantly: In the context of a simple beneficiary designation of bank accounts and financial assets, what reason is there to think that by better informing Bud about beneficiary designations, his particular designations would have been different?

Bud had successfully made such beneficiary designations several times in the past, independent of any assistance from Cyndi. In doing so, **he had always appointed Cyndi as either a primary or contingent beneficiary or afforded her a right of survivorship. See, e.g.,** 4RR60-62; PX 11; PX 16; PX 17. *He never once appointed even one of the plaintiffs as any sort of beneficiary on any such assets. Not once. Nor is there evidence he had ever once appointed his estate as beneficiary of these assets. Nor is there evidence that he had ever failed to expressly appoint a beneficiary.* But the plaintiffs think the Court can just assume damages because *if* Bud would have acted diametrically opposite of his consistent 25-year history of conduct then there would have been damage. What was it that Cyndi should have said but didn't that would have persuaded Bud to take such an about face?

In this case, it isn't sufficient to say that if the actual designations are voided, then the estate is beneficiary by default. As even the plaintiffs concede, the issuers of the annuities – the counterparties in the transactions – required Bud to designate beneficiaries. *See* Reply Br. at 4. This of course, is unlike the situation in a typical will contest, where the decedent was unduly influenced into the discretionary act of making a successor will that supplanted the prior will that reflected the decedent's true intent. In such situations, it is reasonable to infer that but for the undue influence, the successor will would not have come about. Such an inference is not reasonable here. So the question is who he would have designated in the absence of any fiduciary breach. There

is no direct proof or evidence supporting a reasonable inference that his beneficiary would have been his estate.

At trial, the only attempted proof that the beneficiary would have been the estate amounted to a few, purely speculative assertions that the plaintiffs presumed Bud would have wanted his non-probate assets to pass to the same persons and in the same proportions as he provided for his probate assets, via his will. As explained in Cyndi's Appellee's brief, none of the plaintiffs testified to personal knowledge of any facts material to damage. Instead, they confessed that their positions rest on their own, subjective and self-serving thoughts and beliefs. *E.g.*, 3RR119 (Phyllis)("I don't know any facts. It's just what I believe as being sisters and knowing the parties."); 3RR111-12 (Phyllis)( stating she didn't "believe" the annuity designations were fair to Bud); 3RR46 (Gilbert)(stating he didn't think the annuity designations were fair because they differed from the will and testifying he didn't "feel like" the designations to Cyndi were Bud's "whole intention of doing it"); 4RR33-34 (Michael Jordan, Bud's grandson)(stating he didn't "believe" the annuity designations were fair to Bud and he believed Bud instead wanted everything divided according to the will, but he didn't have any direct knowledge of Bud's intentions when he signed the designations); 4RR152-53 (Aaron Jordan, Bud's grandson)(stating he believed Bud had designated Cyndi the beneficiary thinking she would "do the right thing" and distribute the proceeds per the will).

***None of the plaintiffs contend that Bud had ever told them anything about his wishes regarding his bank accounts or for the proceeds of the annuities – his***

***wife Joy's annuities. And no one explained any basis for assuming Bud would have wanted these items distributed according to the residuary clause of his will rather than according to the specific beneficiary designations and survivorship rights he issued when setting up the accounts. Rather, they just speculated.*** This is not probative.

Just like unreliable expert opinions, lay opinion testimony that is unreliable and speculative is no evidence (and thus renders no support for a jury's findings on appeal), even when the speculation has been admitted without objection. *See Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 161 (Tex. 2012) (landowner's unexplained, bare conclusions provided no evidence of nuisance damage); *see also Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)(failure to object to unreliable lay opinion was immaterial, because "[i]rrelevant evidence, even when admitted without objection, will not support a judgment"). Such speculative testimony "is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'" *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). "[T]he naked and unsupported opinion or conclusion of a witness does not constitute evidence of probative force and will not support a jury finding even when admitted without objection."

## C.      Bud never intended an equal distribution of his non-probate assets.

The plaintiffs on appeal all but conceded that their speculations were non-probative, avoiding them like the Plague. Instead, they latched onto *In re Estate of Russell*. 311 S.W.3d 528 (Tex. App.-El Paso 2009, no pet.). Based on that case, the plaintiffs argued that a decedent's "quality of fairness" could be considered as a basis for inferring that the decedent's true intended disposition of assets would have differed from the disposition being attacked. Respectfully, *Russell* was a much different case, which does far more to prove our point than the plaintiffs'.

In *Estate of Russell*, which litigated a claim of undue influence, the contested will had disinherited the testatrix's granddaughters, for no reason that was explicable in the evidence. The objective proof – prior wills – showed that the testatrix had expressed her own intent to distribute her estate in equal proportion to each of her children, and then to their decedents, per stirpes. *Id.* at 534. The contention in *Estate of Russell* was that these prior wills – the objective proof – "established their grandmother's intent that they share in her estate." *Id.* ("Appellees point out that the prior wills established their grandmother's intent that they share in her estate"). Here, the proof is just the opposite.

Bud's testamentary plan never called for an equal distribution. In fact, Bud had demonstrated his willingness to write an entire slice of descendants out of his testamentary plans: Well before Cyndi ever came to be a fiduciary, Bud had written his son Harold's descendants entirely out of his will (which explains why Harold's children are not parties). Bud's will had initially provided that his son Melvin, who had many

11

health and personal issues, get 60% of the half going to Bud's children. And the codicil executed after Bud's son Harold died had shifted Harold's share to Melvin. *E.g.*, PX3; 4RR149-50. Melvin died a few days before Bud's death. A disposition of the annuity proceeds per the plan of the will hardly seems consistent with Bud's intention to care the most for those in the most need.

In providing for the disposition of his financial assets, Bud had made many beneficiary designations. But he had never once provided that these assets be distributed to his estate or according to his will. Nor did anyone testify that Bud had ever told them he wished to do so or told them that he didn't wish these bank accounts and annuities to be distributed as he had provided in the beneficiary designations.

The annuity's beneficiary designations also were consistent with the source of the funds (Cyndi's mom), and continued the same unequal dispositional plan/intent that Bud and Joy had identified for them from the outset. Moreover, it is undisputed that Bud's overall plan was to take care of Melvin, with his problems, and Cyndi. 4RR199, 73. Melvin predeceased Bud. Cyndi practically singlehandedly took care of Bud.

In *Russell*, in contrast, there was objective proof – prior wills – supporting a reasonable inference that but for the undue influence, Russell's testamentary plan would have provided a per stirpes distribution. The prior, per stirpes wills embodied the "fair and equal treatment" that the witnesses testified the testatrix had demonstrated in her lifetime.

**The objective proof here is that Bud – in all his 90 years – never ever demonstrated an intent for an equal distribution of his assets. He never ever demonstrated an intent that the non-probate bank accounts and annuities be disposed according to his will. And he never ever demonstrated an intent that any surviving descendant save for Cyndi share in these assets.** There is no evidence, direct, indirect, objective or otherwise, to the contrary. So this case is not like *Estate of Russell.*

**The designations Cyndi claims under do not afford her so much as a penny that during Bud's lifetime was ever earmarked for any of Bud's other survivors.** Further Bud his other survivors a probate estate including real estate, an "assortment of personal property," and some cash. 3RR51-52, 83-84.

The plaintiffs have inveigled a 180 degree change in the plan for Bud's non-probate assets, for no reason other than that the record lacked proof that Bud – who through the years proved that he knew what beneficiary designations were for – wasn't specifically informed of what he surely already knew. Maybe this is enough to establish the liability case, owing to the jury charge's badly misplaced burden of proof. But it does not begin to support the damage verdict.

Proof of damages requires actual evidence that Bud, if unimpeded, would have made the beneficiary designation plaintiffs advocate for. There is no hint of such proof. To be crystal clear: our case is exactly the opposite of *Estate of Russell.* There, the legal outcome restored the testatrix's prior, objectively expressed dispositional plan for the

disputed assets, and that plan actually demonstrated an intention of equal treatment. ***Here, in contrast, this Court's decision redirects the bank funds and annuities to persons Bud had never ever designated to receive them. Worse, the decision creates an unnatural disposition: Annuities that originated as the sole property of Cyndi's mom, who had earmarked Cyndi to get them after she and Bud died, have now been redirected away from Cyndi, Bud's caregiver, and to persons who resented Joy, disowned Bud for a huge chunk of their adult lives, and who, in at least Gilbert's case, the record shows had no need of the money.*** (Gilbert, a successful businessman, owned a second home on a lake and had once even owned an airplane. 3RR30, 33.) Also, three of the plaintiffs are the heirs of Bud's deceased son Melvin. To help with Melvin's health and personal problems, Bud had given Melvin a house, 3RR34-35, which, presumably, Melvin's heirs inherited when Melvin died intestate. 3RR86-87; PX15. There is no indication in the record that Bud wished these heirs, as opposed to Melvin, to receive an additional, outsized share of Bud's non-probate assets. And the remaining plaintiffs, Joy's daughters Phyllis and Donna, who didn't have good relationships with Bud, 4RR9, were defendants in this suit until shortly before trial.

This Court has impliedly conceded that the disposition of the bank accounts was not a damage connected to any breach of fiduciary duty. Respectfully, it is inconsistent to not recognize the similar evidentiary failure with respect to the annuities.

**D.** **The evidence establishes that Bud intended Cyndi to receive the annuity proceeds.**

While there is no evidence supporting the plaintiffs' damage recovery – that is, no evidence that but for any fiduciary breach Bud would have made different beneficiary designations – there is solid evidence to the contrary:

One of the accounts at issue, a Bank Texas account identifying Cyndi as the pay-on-death beneficiary, was opened and Cyndi was named beneficiary entirely without Cyndi's knowledge or participation. 4RR60-61; PX11. Cyndi was in a Waco hospital at time, recuperating from a staph infection. 4RR60, 77. It is uncontested that she didn't learn she was the beneficiary of this account until Bud's son Melvin, who along with Bud established the account, died. 4RR61. The plaintiffs have no explanation for this evidence, which also contradicts their speculations about what Bud would have done with the beneficiary designations acting of his own accord.

The record likewise conclusively negates any speculation about other bank accounts at issue (two accounts at Wood County National Bank). These accounts were opened fifteen years before Cyndi obtained any fiduciary rights, when Bud, Cyndi's mother, Joy, and Cyndi jointly opened them in 1991 and 1993. 4RR115. They all three were account owners, with Cyndi holding the right of survivorship. *Id.*; PX5. These accounts contained settlement proceeds Cyndi had received as a result of a workplace accident. 4RR24, 65, 115. So the survivorship rights in Cyndi were both natural and

15

their creation, having preceded Cyndi's fiduciary status, could not have been a damage in this suit.

As for the three annuities, they had been Cyndi's mother's annuities during her lifetime. 4RR71. While Joy was alive, Bud was the annuities' primary beneficiary and Cyndi alone – to the exclusion of the plaintiffs in this suit – was their contingent beneficiary. 4RR190; DX7. After Joy died, Bud exercised a spousal continuation election, choosing to forego lump sum distributions and naming Cyndi as the annuities' sole beneficiary, thus continuing Joy's succession plan for these proceeds. That Cyndi would be the beneficiary of her Mom's annuities is a natural disposition. For Bud to have instead designated the plaintiffs – who mostly disdained Cyndi's mom, and who were even estranged from Bud for a period spanning decades until his 70th birthday, 3RR28-29; 4RR125 –would have shocked the conscience. One of the plaintiffs, Phyllis Woods, who is Cyndi's half sister, admitted to having had no relationship at all with Bud until Joy died, in 2005. 3RR104. Of course, Bud had the legal right to make such a beneficiary designation upon Joy's death. But there is no evidence he ever would have done so.

**E.    If there could be evidence of damages, it would be factually-insufficient evidence.**

The failure to present any evidence at all of damage of course requires affirmance of the take-nothing judgment. But if there could be some evidence of damage here, it surely would be factually insufficient evidence. That would require a remand of the

16

entire case, including liability, because Appellate Rule 44.1(b) in that event would prevent a remand that was limited to the issue of unliquidated damages. TEX. R. APP. P. 44.1(b); *Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001).

## Conclusion and Prayer

For the reasons stated in this motion, the Court should grant rehearing and should affirm the trial court's take-nothing judgment. Alternatively, if there were somehow some (albeit factually-insufficient) proof of damages, the Court in that event should remand the cause, including liability, for a new trial (which could be conducted with the jury properly charged on the plaintiffs' liability burden).

Respectfully submitted,


    /s/ Greg Smith
GREG SMITH
State Bar No. 18600600
NOLAN SMITH
State Bar No. 24075632
RAMEY & FLOCK, P.C.
100 E. Ferguson, Suite 500
Tyler, TX 75702
Telephone: (903) 597-3301
Facsimile: (903) 597-2413
gsmith@rameyflock.com
nolans@rameyflock.com

J. BRAD MCCAMPBELL
State Bar No. 13358000
CURTIS, ALEXANDER,
   MCCAMPBELL & MORRIS, P.C.
P. O. Box 38
Emory, TX 75440
Telephone: (903) 473-2297
Facsimile:   (903) 473-3069
bmccampbell@cammpclaw.com

Counsel for Appellee,
Cynthia Kay Lyles

## Certificate of Compliance

1.      This motion complies with the type-volume limitation of TEX. R. APP. P. 9.4 because it contains 4,456 words, excluding the parts of the motion exempted by TEX. R. APP. P. 9.4(i)(2)(B).

2.      This motion complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in the proportionally spaced typeface using Word 2007 in 14 point Garamond font.

Dated: January 12, 2015.

 /s/ Greg Smith
GREG SMITH

## Certificate of Service

The undersigned certifies that a copy of the above and foregoing document was served upon counsel for Appellants in accordance with the applicable Texas Rules of Civil Procedure on this the 12th day of January, 2015, on the following:

**Via email baruchesq@aol.com**
Chad Baruch
The Law Office of Chad Baruch
3201 Main Street
Rowlett, TX  75088

**Via email prleake@sbcgloball.net**
Paul R. Leake
Leake & Blair, P.C.
P. O. Box 1300
Forney, TX 75126

/s/ Greg Smith
GREG SMITH